UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Mary Faeth, | Case No. 1:12-cv-792 |
| Plaintiff, | |
| vs. | |
| Diversified Maintenance Systems, Inc., et al, | |
| Defendants. | |

# ORDER

Mary Faeth filed a complaint against Diversified Maintenance Systems ("Diversified"), Sears Roebuck and Company ("Sears"), and several other defendants, alleging that she was injured when she tripped on a floor mat and fell while leaving a Sears retail store in Hamilton County, Ohio. Sears removed the case to this Court on the basis of diversity jurisdiction. Faeth eventually settled her claims against Diversified and Sears, and all of the other defendants have been dismissed.

Pending before the Court is Sears' motion for partial summary judgment on its crossclaim against Diversified. (Doc. 59) Sears contends that Diversified is contractually obligated to defend and indemnify Sears from Faeth's claims. Diversified opposes Sears' motion (Doc. 74), and Sears has filed its reply. (Doc. 75) For the following reasons, the Court grants Sears' motion.

## FACTUAL BACKGROUND

<u>The Sears-Diversified Contract</u>

In November 2007, Sears and Diversified entered into a Master Service

Agreement, which was in effect at the time of Faeth's fall on February 19, 2011. (Knodle Affidavit, Ex. A) Diversified agreed to furnish "housekeeping services and work," including daily inspection and cleaning of carpets and floor matting, in Sears' retail stores throughout the country. Id. at Section 9.1(d). Diversified was required to directly supervise its employees and subcontractors while performing these services.

Article 4 of the Master Agreement is entitled "INDEMNIFICATION AND DEFENSE OF CLAIMS" and is the basis for Sears' pending motion. Pertinent provisions of Article 4 are quoted below:

> 4.1 **Indemnification**. To the fullest extent permitted by law, Contractor shall protect, indemnify and hold harmless Kmart, Sears, their parent corporation and Affiliates, and the landlords of the Facilities (if any) and the officers, directors, shareholders, distributors, agents, employees, successors and assigns of each of the foregoing (collectively, the "Indemnified Parties"), from and against any and all claims, demands, actions, causes of action, liabilities, damages, losses, fines, penalties and expenses, including, without limitation, reasonable attorneys' fees and expenses, resulting from or arising out of any injury to or death of any person, damage to any property, or other loss, cost or damage or expense arising out of or related to the following: (I) the Services or any acts, errors or omissions of Contractor, its employees or Subcontractors, whether or not lawful or within the scope of their employment; (ii) the failure of Contractor, its employees or Subcontractors to comply with any law, statute, ordinance, code, rule, regulation or requirement of a public authority; (iii) an inquiry, investigation, or charges of any public authority relating to the services; ... or (viii) any breach by Contractor of any obligation of Contractors under this Agreement (items (I) through (viii) are collectively the "Claims"). The obligations of Contractor under this Article 4 shall not be construed to negate, abridge, or reduce other rights or obligations of indemnity which would otherwise exist as to a party or person described in this Section 4.1.
> ...
>
> 4.3 **Attorneys Fees**. The indemnity obligations of Contractor under this Article 4 also include, without limitation, all costs, expenses and reasonable attorneys' fees incurred by the Company to enforce the obligations of Contractor under this Article 4.
>
> 4.4 **Defense Obligations**. Contractor shall, at its own cost and expense, defend the Indemnified Parties from and against all allegations (even though such allegations may be false, fraudulent or groundless) asserted in any and all Claims, whether actual or alleged and whether or not Contractor's indemnity obligations under

this Article 4 shall apply.  Contractor shall use counsel reasonably satisfactory to the Company in the defense of the Claims.  Contractor shall advise Company of the current status of any action, claim, demand, or suit being defended by Contractor in accordance herewith.  Upon written notice to Contractor and in the event that Contractor fails to adequately defend Claims, Company may, at its election, take control of the defense and investigation of the Claims, and may employ and engage attorneys of its own choice to manage and defend such Claims, at Contractor's cost, risk and expense, provided that the Company and its counsel shall proceed with diligence and good faith with respect thereto.

      4.5 **Company Negligence or Wilful Misconduct.**  Contractor will not be relieved of the foregoing defense obligations by allegations or claims that Company was negligent or that an injury or loss occurred as a result of the concurrent negligence of Company, Contractor and/or a Subcontractor.  Notwithstanding the foregoing, Contractor shall not be liable for indemnification to the extent any injury, damage or loss is finally judicially determined by a court of competent jurisdiction to have been caused by the negligence or willful misconduct of Company or its employees.

      4.6 **Construction**.  It is understood and agreed that the parties intend this defense and indemnification provision to be construed broadly in favor of Company, so as to provide the fullest defense and indemnity protection permitted by law.  If this indemnity provision is construed by a court of competent jurisdiction to require indemnification over and above that permitted by applicable law or public policy, the parties intend that the Agreement be judicially modified to afford Company the maximum indemnification protection allowed by law.

Other relevant sections of the Master Agreement include Article 5.1(c), which required Diversified to maintain general liability insurance of at least $5 million that named Sears and the Indemnified Parties as additional insureds.  Article 8.5 is a choice of law clause containing the parties' agreement that the contract is governed by Illinois law.  Article 8.6 is an integration clause.

<u>Faeth's Accident</u>

Mary Faeth visited the Glenway Avenue Sears store on the morning of February 19, 2011.  She had visited the store many times before and was familiar with its layout.  She had no difficulty entering the store.  She left about half an hour after entering, and used the same door through which she had entered.  She tripped and fell over a large

floor mat that was rolled up at one end in front of the exit doors. Faeth testified that the floor mat was flat on the floor when she entered the store earlier that morning. Kimberly Young, Sears' Assistant Store Manager who was on duty at the time, received a telephone call from another employee who told Young that a customer had fallen. By the time Young arrived at the door, she saw Faeth sitting in a chair; Young testified that Faeth said she did not know why she fell, and told Young "My leg just gave out." (Young Dep. at 18) A videotape of the incident revealed that Faeth apparently tripped on a floor mat that was folded over at one end. A Diversified employee, Mamadou Drame, was nearby cleaning windows when Young arrived on the scene, and she asked him what had happened. Young testified:

> I asked Mamadou, while Joe was talking to Mrs. Faeth, what had happened, and he came over and he rolled up the rug and then he motioned like he was cleaning. And he was talking, but I could not understand all of the words that he was saying. And I don't recall the words that he actually said, but I just remember the action of him rolling the rug and showing me how he was cleaning.

* * * * *

> Q: Well, what did he explain?
>
> A: He rolled - he physically rolled the rug, and he was talking very quickly. So I - I don't recall the words that he said.
>
> Q: Okay.
>
> A: Just the action.
>
> Q. Do you get the impression, then, in your discussion with him that he – that you felt that he caused the rug to be rolled over?
>
> MR. SILK: Objection.
>
> Q. You can answer.

MR. SAVIDGE: You can answer.

A. That he was cleaning and had rolled the rug up.

(K. Young Dep. at 19-21.) Mamadou Drame does not speak English very well, but Young testified that prior to the Faeth incident, she had been able to satisfactorily communicate with him about his job duties. Young also testified that Faeth left the store and fell again outside the store on a sidewalk.

Faeth's complaint alleged that Diversified and Sears were jointly and severally negligent with respect to the condition of the floor mat and the store premises, and in failing to supervise and train their employees. (Doc. 2) Sears answered the complaint and filed a crossclaim against Diversified, alleging that Diversified and its insurers were obligated to defend and indemnify Sears. Sears further alleged that despite its requests, neither Diversified nor the insurers had agreed to defend Sears in the lawsuit. (Doc. 7) After engaging in discovery, both Sears and Diversified filed summary judgment motions against Faeth, and Sears sought partial summary judgment on its crossclaim against Diversified. Faeth then settled her claims without responding to either of the motions; see Doc. 71). Diversified states that Sears did not contribute money to the settlement, and that the settlement agreement between Diversified and Faeth includes the dismissal of Faeth's claims against Sears and all other defendants.

Sears' pending motion argues that the unambiguous terms of the Master Agreement's Article 4 require Diversified to defend Sears from Faeth's claim. It seeks a partial judgment ordering Diversified to reimburse it for its attorneys' fees in defending Faeth's claim and in prosecuting its crossclaim. Diversified denies that it must defend Sears because there is a factual dispute about whether Diversified's employee caused

the floor mat to be rolled up. It contends that Illinois law permits Diversified to "go behind" Faeth's allegations to determine if the defense and indemnity provisions of Article 4 are triggered by her complaint. Diversified submits an affidavit from Mamadou Drame, who was not deposed prior to Faeth's settlement. Drame avers that he did not roll up the floor mat on the day of Faeth's accident. Diversified contends that this factual dispute prevents entry of judgment in favor of Sears.

## ANALYSIS

Summary Judgment Standards

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers. The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).

The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply

show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. "If the evidence is merely colorable, ... or is not significantly probative, ... the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

Construction of the Master Agreement

Neither Sears nor Diversified contends that Article 4 is ambiguous. In such a case, the Court's duty is to give effect to the intent of the parties by examining the language they used. "Illinois, like most jurisdictions, requires that contracts be interpreted as a whole, in a way that gives effect to all terms, in the light of their ordinary and natural meanings. ... Furthermore, the court must give effect to the intention of the parties at the time of the agreement. ... Where the terms of the contract are clear, the court must ascertain that intent solely from the language of the agreement." LaSalle National Trust, N.A. v. ECM Motor Co., 76 F.3d 140, 144 (7th Cir. 1996)(internal citations omitted).

Sears argues that the Master Agreement unambiguously requires Diversified to

defend it from any "claim" alleging that Diversified's work caused injury to someone. Faeth's complaint alleged that Diversified was negligent (and that Diversified and Sears were jointly and severally negligent); those allegations triggered Diversified's defense obligations under Article 4.4, which requires Diversified to defend Sears from "**all allegations (even though such allegations may be false, fraudulent or groundless**) asserted" in any claim against Sears (emphasis added). Sears' motion contends that the only evidence about the floor mat's condition was Ms. Young's testimony describing her conversation with Mamadou Drame. She also testified that Sears employees do not clean floors or maintain the door mats unless there is a spill or condition that would require immediate attention; and there is no evidence suggesting that occurred on the day of Faeth's accident.

Diversified responds that Illinois law prohibits the Court from construing the contract to require Diversified to indemnify Sears from its own negligence, unless that intent is clearly and unambiguously expressed in the contract terms. Faeth testified that the floor mat was flat on the floor when she entered the store, so the mat must have been rolled up sometime between the time that Faeth entered the Sears store and when she left, a period of less than an hour. Mamadou Drame avers that he did not flip or fold over the floor mat that day, and he does not know who did. He states that he was instructed not to flip mats or rugs to clean them when the Sears store is open. (Doc. 74, Ex. A) Diversified argues that since his affidavit raises a factual dispute about who moved the floor mat, the defense and indemnity obligations of the contract are not triggered simply by Faeth's allegations.

Diversified relies on <u>Ervin v. Sears, Roebuck & Co.</u>, 127 Ill. App.3d 982 (Ill. App.

5th Dist. 1984), where the court addressed an indemnity agreement that was included in a sales contract between Sears and Flagg-Utica Corporation. The plaintiff, Ervin, was a welder who was severely burned while welding at work. He filed suit against Sears, contending that thermal underwear he bought at Sears and that he was wearing at the time of the accident caught fire. In the years before Ervin's accident, Flagg sold underwear to Sears, and their purchase contracts included Flagg's agreement to defend and indemnify Sears from liability and expense arising out of any alleged defect in Flagg's products. Flagg also agreed to obtain products liability insurance naming Sears as an additional insured. Sears tendered Ervin's claim to Flagg and to the insurer (American Mutual), and both rejected the tender and refused to defend Sears. Sears then filed a third-party complaint in Ervin's suit against Flagg and American Mutual, contending that Flagg sold Ervin's underwear to Sears. Flagg denied that allegation and filed a motion for summary judgment supported by its officer's affidavit, who averred that Flagg did not manufacture Ervin's underwear which bore a "Sears" label. Prior to a ruling on Flagg's motion, Ervin's claims against Sears went to trial, and the jury returned a verdict in favor of Sears. Sears then sought judgment against Flagg and American Mutual to recover its defense costs. The trial court granted judgment to Sears, and denied summary judgment to Flagg and American Mutual.

On appeal, the court affirmed judgment against American Mutual because an insurer has the legal duty to defend a claim that potentially lies within coverage, which under Illinois law is determined solely upon a complaint's allegations. With respect to Flagg and the indemnity agreement, however, the court found that the rules governing insurance policies should not automatically apply to private indemnity contracts:

> ... indemnity agreements are sufficiently disfavored that they
> must be strictly construed ... . To hold here that the
> contracts between Flagg and Sears should be interpreted so
> broadly as to require Flagg to defend based merely on the
> allegations of the Ervin complaint would do violence to the
> rule of strict construction applied to contracts of this type,
> and we decline to do so. Simply stated, while the law
> expressly prohibits those in the business of insurance from
> refusing to defend based on what they have discovered from
> 'looking behind' the subject complaint, no such restriction is
> imposed on a business which, as part of its agreement with
> a purchaser of its products, agrees to defend and/or
> indemnify that customer in suits involving those products.

Id. at 990 (internal citations omitted). The court conceded that no other Illinois court had considered or recognized this distinction between insurance policies and private contractual agreements to defend, but concluded that it was a reasonable principle. The question of who manufactured the underwear had not been decided in Ervin's trial against Sears, and so the court remanded Sears' third-party complaint for a trial on that issue.

Diversified contends that Ervin requires this Court to deny Sears' motion in view of the factual dispute about who turned over the floor mat. Sears responds that nothing in Ervin suggests, much less holds, that extrinsic evidence may be utilized to construe an unambiguous contract. Nor was the Ervin court addressing a factual dispute about whether or not there was an actual defect in Flagg's thermal underwear. Instead, the court was addressing Flagg's argument that it did not manufacture Ervin's thermal underwear. If it did not, the indemnity contract was never triggered by Ervin's lawsuit. But here, the Master Agreement clearly imposed the duty to maintain all carpeted areas upon Diversified. Faeth's complaint alleged that she was injured as a result of a failure to properly maintain the floor mat, which was Diversified's responsibility.

Sears also notes that the indemnity contract at issue in Ervin differed from the Sears-Diversified contract. The purchase contracts between Sears and Flagg stated that Flagg agreed to protect, defend, hold harmless and indemnify Sears from all liability and expense arising out of "any alleged or claimed defect in [the underwear], whether latent or patent ...". Ervin, 127 Ill. App.3d at 984. There was no separate defense obligation as there is in the Sears-Diversified contract. Article 4.4 of the Master Agreement (quoted above) requires Diversified to defend Sears "from and against all allegations (**even though such allegations may be false, fraudulent or groundless**) asserted in any and all Claims, whether actual or alleged **and whether or not Contractor's indemnity obligations under this Article 4 shall apply**." (emphasis added).

Sears further contends that subsequent Illinois cases have questioned and limited Ervin's statement that private indemnity contracts are disfavored and must be strictly construed. See, e.g., Higgins v. Kleronomos, 121 Ill. App.3d 316, 459 N.E.2d 1048 (Ill. App. 5th Dist. 1984):

> An indemnity contract or contract provision is construed like any other contract ... . In construing an indemnification agreement the court is bound to give effect to the intention of the parties determined solely from the language used when no ambiguity exists. ... In a leading case on the construction of indemnification agreements, *Westinghouse Electric Elevator Co. v. LaSalle Monroe Building Corp.* (1946), 395 Ill. 429, 70 N.E.2d 604, superseded by statute as stated in *Long v. Bucyrus-Erie Co.* (1983), 112 Ill. App. 3d 578, 445 N.E.2d 934, our supreme court stated that "courts will not, because a more equitable result might be reached thereby, construe into the contract provisions that are not therein. ... In construing a contract which purports on its face to be a complete expression of the entire agreement, courts will not add thereto another term, about which the agreement is

-11-

silent."

(Id. at 319-320, internal citations omitted.) And in Hanley v. Balbo Co., 1998 U.S. Dist. LEXIS 15314, *5 (N.D. Ill. 1998), the district court concluded that Illinois courts will apply the strict construction rule only when the agreement protects a party from its own negligence. Here, as Sears correctly notes, Article 4.4 expressly requires Diversified to defend Sears against **all** allegations, including "false, fraudulent or groundless" allegations, and without regard to whether Diversified may also be required to indemnify Sears. Furthermore, Diversified is not obligated to indemnify Sears from its own negligence or willful misconduct, as clearly stated in Article 4.5.

This Court finds the analysis in Applied Industrial Materials Corp v. Mallinckrodt, 2003 U.S. Dist. LEXIS 4969 (N.D. Ill. March 28, 2003) supports Sears' arguments. The indemnity agreement at issue in that case was part of a stock purchase contract executed when Applied bought two companies from Mallinckrodt's predecessor. Applied was subsequently sued in a number of third-party personal injury lawsuits alleging asbestos injuries. Applied tendered its defense to Mallinckrodt, arguing that the products were made by the former Mallinckrodt companies, and the stock purchase contract obligated Mallinckrodt to defend Applied. Mallinckrodt argued that the third-party allegations were too vague and that the injuries did not involve products that its predecessor companies manufactured, and thus it had no duty to defend Applied. The parties stipulated that Applied never sold asbestos-containing products, and that at one time a Mallinckrodt company had done so. The parties filed cross-motions for summary judgment, and the district court granted judgment to Applied:

> The lawsuits assert that [Applied] engaged in the

> manufacture and sale of asbestos products which resulted in personal injury. Because the parties have stipulated that [Applied] has never done this and that Malinckrodt has, the reasonable inference is that the complaints, however vague their language, are referring to the activities of the two companies purchased by [Applied] from Malinckrodt. Such allegations trigger the duty to defend. ... If the asserted liability is based upon the alleged production and selling activities of the two companies purchased by [Applied], however mistaken such allegations may be, then the duty to defend remains. That such allegations are factually incorrect is a good defense to the lawsuits, it is not a basis for refusing to defend the lawsuits. ... The allegedly incorrect factual assertions in the lawsuits upon which Mallinckrodt bases its argument that it has no duty to defend or indemnify are no different from any other factual allegations necessary to establish liability in any lawsuit. The logical extension of Mallinckrodt's argument is that if any lawsuit, alleging that the [predecessor companies] are liable, is based upon an erroneous factual predicate, Mallinckrodt need not defend or indemnify. The problem, of course, is that it takes money to prove the lawsuit is based upon an erroneous factual predicate, and it is in order to avoid having to spend that money that parties contract to allocate the expense of defending lawsuits to one or the other. ... The obvious intent of the provisions was to protect [Applied] from lawsuits which might follow the companies they purchased from Mallinckrodt.

Id. at **19-20. This Court finds that these observations and conclusions fully apply here. The obvious intent of Article 4.1 and 4.4, read together, was to protect Sears from the costs of defending lawsuits alleging that the maintenance of carpets or floors in the Sears stores caused someone injury. That is what Faeth's complaint plainly alleges. Article 4.4 obligates Diversified to defend Sears from Faeth's lawsuit.

Ohio Revised Code 2305.31

Diversified also contends that the indemnity clause in the Master Agreement is prohibited by Ohio Rev. Code 2305.31. That statute applies to agreements relating to

-13-

"the design, planning, construction, alteration, repair, or maintenance of a building, ..." and prohibits indemnity agreements protecting a party from its own negligence or from that of its independent contractors, agents and employees. Sears contends that this statute is inapplicable because the Master Agreement is not a construction contract.

Diversified cites <u>Davis v. LTV Steel Co.</u>, 128 Ohio App.3d 733 (11th Dist. App. 1998), which arose from personal injuries sustained by a contractor's employees while they were cleaning large tar sump pumps at an LTV steel plant. The employees sued LTV, and the contractor refused to defend or indemnify LTV because the accident was caused by LTV's own negligence in a part of a plant that was under LTV's exclusive control. The Ohio court of appeals found the contract was subject to the statute because the employees were engaged in the maintenance of an "appliance" (the sump pumps) that were affixed to the plant. The court relied on other cases involving steel mills which held that an "appliance" within the meaning of the statute is an "accessory, fixture, or attachment to real estate." <u>Id</u>. at 738-739. See, e.g., <u>Waddell v. LTV Steel Co.</u>, 1997 Ohio App. LEXIS 4893 (8th Dist. App., Nov. 6, 1997), finding that a steel plant's kiln was an "appliance" under R.C. 2305.31.

Here, whether or not the Master Agreement falls within the purview of this statute, it does not require Diversified to indemnify Sears for its own negligence. Article 4.5 plainly states that Diversified has no indemnity obligation if the injury or damage is caused by Sears' negligence or willful misconduct. And because the separate defense obligation in Article 4.4 applies without regard to whether a duty to indemnify may exist, the Court concludes that the statute does not prohibit the defense obligations contained in Article 4.4.

Spoliation of Evidence

Finally, Diversified asserts that Sears motion must be denied because Sears spoliated critical evidence, the videotape that might show who caused the floor mat to be rolled up prior to Faeth's fall. Faeth propounded an interrogatory asking if any photographs or videos were taken of the incident or the scene before or after Faeth's fall. Sears responded that "a video camera located in the ceiling approximately 15 feet from the door, captured the Plaintiff walking toward the exit door of the building. The rug was folded and the video shows the Plaintiff stumble and falling. The video has been retained." (Doc. 32, Ex. 2, Interrogatory No. 30) Sears produced that videotape, but no tape of any time period prior to that. Diversified argues that Sears had exclusive control over the videotape, and its alleged destruction has deprived Diversified of evidence needed to prove its contention that its employee did not disturb the floor mat.

Diversified correctly states that the Court may award sanctions for evidence spoliation if it establishes: (1) that the party with control over the evidence had an obligation to preserve it at the time the evidence was destroyed; (2) that the party destroyed the evidence with a "culpable state of mind;" and (3) that the destroyed evidence is "relevant to the other side's claim or defense." Byrd v. Alpha Alliance Ins. Corp., 518 Fed. Appx. 380, 383-384 (6th Cir. 2013). Diversified argues that all three factors are satisfied here because Sears had control "over the evidence" at all times; because Sears "destroyed" the tape, whether or not it did so willfully; and the tape would have shown who rolled up the floor mat.

Sears responds that this argument is based entirely on sheer speculation. The videotape of the incident was secured and Sears shared it with Diversified. There is

absolutely no evidence supporting Diversified's contention that a video of that area taken earlier in the day ever existed, much less that Sears willfully destroyed that tape. The Court must agree with Sears. Diversified's argument assumes without factual foundation that "evidence" in the form of videotape of the Sears entranceway in the hour or so prior to Faeth's fall existed. There is no evidence that such a tape existed, or if it did for how long it may have existed. There is absolutely no evidence or testimony in the record concerning Sears' video recording system or about the camera described in the interrogatory answer that was located in the ceiling near the door. There is absolutely no evidence suggesting that anyone at Sears "destroyed" any videotape at any time after Faeth's incident.

In <u>Adkins v. Wolever</u>, 554 F.3d 650 (6th Cir. 2009)(en banc), the Sixth Circuit addressed a spoliation claim brought by the plaintiff, a state prisoner alleging a Section 1983 claim against a prison guard. The plaintiff alleged that the guard assaulted him before removing his handcuffs. Prior to the filing of the lawsuit, a prison inspector had reviewed color photographs taken of plaintiff's injuries and video footage of the area where the alleged assault took place. Plaintiff sought production of these materials in discovery, but by then the materials had been lost or destroyed. The Sixth Circuit held that the district court must apply federal law to determine if spoliation sanctions were appropriate. There was no dispute in the case that the color photographs and videotape had in fact existed before plaintiff filed suit. Here, in contrast, there are **no** facts supporting Diversified's assertion that an earlier videotape ever existed. It is Diversified's burden at the summary judgment stage of coming forward with evidence showing a **genuine** factual dispute. It has not done so, and the Court rejects its

argument that spoliation sanctions are appropriate here.

## CONCLUSION

For all of the foregoing reasons, the Court concludes that Sears is entitled to entry of partial summary judgment on its cross-claim against Diversified. The Master Agreement requires Diversified to defend Sears from Faeth's claims, and permits Sears to recover the costs incurred to prosecute its cross-claim.

Sears' motion suggests that the parties may be able to stipulate to the amount that Sears is entitled to recover. The Court orders that the parties submit a joint status report no later than **January 27, 2014**, stating whether such a stipulation will be filed, or requesting further briefing on the amount of Sears' recovery.

SO ORDERED.

DATED: January 6, 2014                          s/Sandra S. Beckwith
                                                                     Sandra S. Beckwith, Senior Judge
                                                                     United States District Court